UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

FREEMAN MOBILE ORTHODONTICS PLLC,

Case No. 20-15408-SMG
Chapter 11

Debtor.
_____/

**EXPEDITED APPLICATION OF DEBTOR-IN-POSSESSION FOR ORDER APPROVING EMPLOYMENT OF SERENA DYER PISONI, MATT PISONI, AND NEXT CHAPTER, LLC AS BUSINESS MANAGERS FOR THE DEBTOR**

**Reason for Exigency**

**The Debtor has an immediate need for the retention of business managerial services, as Dr. Freeman, owner of the Debtor and a full-time practicing orthodontist, requires the use of third-party services to help manage his businesses and his practice. Therefore, the Debtor requests a hearing on this matter be set on June 10, 2020 or such other date as this Court deems appropriate.**

FREEMAN MOBILE ORTHODONTICS PLLC, Debtor-in-Possession (the "Debtor") respectfully requests an order of the court approving the employment of Next Chapter, LLC, Serena Dyer Pisoni, and Matt Pisoni and to provide business managerial services to the Debtor in this case, and states as follows:

1. On May 17, 2020, the Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code [ECF 1].

2. The Debtor desires to employ Next Chapter, LLC ("Next Chapter"), Serena Pisoni ("Mrs. Pisoni"), and Matt Pisoni ("Mr. Pisoni") as business managers in this case.

3. The Debtor believes that Next Chapter, LLC, Mr. and Mrs. Pisoni (collectively "Next Chapter") are qualified to manage the business operations of the Debtor, as Next Chapter has done since October 2019 and as described more fully below.

4.  Next Chapter is owned by Serena Dyer Pisoni.

5.  For the sake of transparency, Next Chapter employs Mr. Matthew Pisoni who was previously convicted on a single count of conspiracy to commit mail fraud. However, it should be noted that conviction is currently under review and the Debtor expects will be reversed[1]. While the Debtor feels it unnecessary, in an abundance of caution and to provide comfort for all parties in interest, Mr. Pisoni does not nor will not have control over the Debtor's accounts nor will he have check-writing authority.

6.  Next Chapter's services have proved to be invaluable to the Debtor since October 2019 and their involvement has been key to the Debtor's recent turnaround, as more fully described below. Next Chapter's continued involvement will be fundamentally critical for the continued and successful turnaround of this company.

7.  Next Chapter has provided, and will continue to provide, the following services to the Debtor:

**Hiring and staff management(Mr. Pisoni)**

Assisted the Debtor's staff with the following:

- Advised on the downsizing of unnecessary, underutilized, and expensive staff located in Arkansas.
- Oversaw and managed relocation to Florida
- Hired less expensive, local staff to work from the Florida office where they could be supervised.
- Maximized the efficiency and use of that staff's time to keep HR costs down while allowing the Debtor to perform all the patient care needed. This was previously handled by over 20 people, many earning salaries of over $70,000/yr. when now these duties are handled by 2 full time and 3 part time employees making $13 to $23/hrs.

**Patient communication(Mrs. Pisoni and Mr. Pisoni)**

- Patient follow up protocols have been enhanced dramatically. Worked with clinical staff to understand the universe of patients that needed treatment and follow up. Set up

---

[1] An explanatory letter from Mr. Pisoni's regulatory attorney is attached to this Application.

- protocols with clinical staff that allowed for proper servicing of patients without the need for the number of staff previously used.
- Created an outbound calling campaign to mend fences with a significant number of frustrated patients who had felt they were not getting the VIP treatment they wanted.
- Launched an email campaign to keep patients up to date on their treatment and account status.
- Implemented a follow up regimen that allowed for greater collections of monthly fees from previously non-paying patients.
- On-going reactivation of patients and former patients who had stopped treatment. These patients are now paying and are satisfied with the Debtor's services.
- Implemented Dr Freeman's goal of increased video conferences with patients prior to this approach becoming in vogue due to the Covid crisis. It was quickly realized that having Skype/Zoom meetings with patients to answer questions and get updates on the fit of their aligners and progress of their treatment could be handled faster and with far lower expense than by driving large trucks across the country. This dramatically reduced costs and created much more satisfied patients.

### **Vehicles: (Mr. Pisoni)**

- Eliminated the need for excessive and expensive use of trucks. Although the vehicles are still an important part of the Debtor's operations, they are used much more sparingly, saving the company wasted employee time driving and costs associated with fuel, vehicle repairs and excessive travel expenses.
- Constructed mobile patient servicing protocols to cut cost and maximize number of patients seen on a monthly basis

### **Pricing plans/Marketing research: (Mrs. Pisoni)**

- Creating new pricing options to stay competitive in a rapidly evolving market. Previously the Debtor only offered a single priced plan of around $6,000 that necessitated the use of the Debtor's trucks. Now there are 3 different plans available to new patients ($2500, $3800 and $5400) making this more affordable for a wider range of patients and budgets as well as eliminating the need for a high number trucks, and reducing both the payroll burden of costly staff willing to drive those trucks as well as the cost of maintaining and transporting those trucks.

- Research of competitive brands

### **Aligner sourcing: (Mr. Pisoni)**

- Previously the cost of aligners for the Debtor was $1200+ per patient paid for by the Debtor to the supplier on the day the treatment was started. By implementing Dr Freeman's goal of bringing aligner production in house, the Debtor has been able to lower its aligner costs to $250 per patient and is able to spread that cost over the length of the patient treatment (roughly 18 months).

### **Bank and merchant fees: (Mr & Mrs Pisoni)**

- Pared down the use of unneeded and costly bank accounts.
- Eliminated the use of an onerous merchant agreement that was costing the company $10,000/mo.
- Eliminated the need for 12 merchant accounts, all carrying excessive costs, replaced by a single merchant account which allows for easier accounting and lower costs.
- Negotiated a new merchant agreement that saves the company 2%/mo. on all collected revenue.
- Working to eliminate costly and archaic software programs and replace them with modern, multi-dimensional and flexible programs that can handle multiple functions, more efficiently and a fraction of the costs.

**Bookkeeping/Accounting: (Mr. Pisoni)**

Assisted the Debtor's staff with the following.

- Went through an extensive vetting process to find a controller/bookkeeper with the experience and credentials to handle the imperfect sets of books inherited by the Debtor, but also willing to do so on a part-time basis. This was exceptional, considering that good bookkeepers are typically in high demand and require large fees for their work. Mr. Pisoni found all of these qualifications, and at a bargain.
- Worked extensively for months with an accounting firm and bookkeepers to fix 2 years of imperfect financials.

**Revenue leading up to and following Next Chapter's involvement:**

In addition to the above list, Next Chapter has been able to not only stop rapidly declining revenues but also to begin increasing them by reactivation patients who had stopped treatment and who had decided to stop paying. Below is the monthly revenue leading up to and following Next Chapter's involvement with the Debtor:

- May 19: $136,000
- June 19: $129,000
- July 19: $116,000
- Aug 19: $109,000
- Sep 19: $96,000
- Oct 19: $85,000 Next Chapter's engagement
- Nov 19: $84,000
- Dec 19: $88,000
- Jan 20: $90,000
- Feb 20: $96,000
- Mar 20: $97,000
- Apr 20: $156,000

8. Of particular note, around July of 2019, the Debtor was hemorrhaging money at a rate that was no longer sustainable. Management decided that it would have to cease operations

and closed its doors, leaving patients with unfinished treatment, investors and creditors with worthless accounts receivable, and Dr Freeman with the burden of figuring out how to service all of the Debtor's patients as he is ethically obligated to do.

9. Next Chapter has taken the Debtor from being hopelessly in debt with no prospect for a turnaround to a company that is cash flow positive and ready to launch new customer acquisition efforts.

10. With Dr Freeman having the responsibilities of running his brick and mortar practice as well as overseeing all orthodontic treatment for both the Debtor and his private practice, it is imperative that Next Chapter be approved as manager.

11. To the best of the Debtor's knowledge, neither Mr. Pisoni nor Next Chapter has any connection with the creditors or other parties in interest or their respective attorneys, nor represent any interest adverse to the Debtor. Next Chapter's owner, Serena Dyer Pisoni, is a general unsecured creditor of affiliate Interstellar Disruption, LLC; however, if this Application is approved, she will waive all claims against this Debtor or any of the affiliated estates. Mr. Pisoni is not a creditor.

12. An affidavit of Matt Pisoni and Serena Dyer Pisoni demonstrating that each are disinterested as required by 11 U.S.C. § 327(a), along with a verified statement as required under Bankruptcy Rule 2014, will be filed shortly after the filing of this Application.

WHEREFORE, the Debtor respectfully requests that this Court enter an order approving the retention of Next Chapter LLC, Serena Dyer Pisoni, and Matthew Pisoni as business managers of the Debtor and granting any further relief as this Court deems just and proper.

I HEREBY CERTIFY that a true copy of the foregoing was served on those parties entitled to receive CM/ECF noticing on June 3, 2020 and listed below, and will be furnished to all

appropriate parties with a copy of the Notice of Hearing.

                        Respectfully Submitted,

                        Wernick Law, PLLC
                        *Counsel for the Debtor*
                        2255 Glades Road, Suite 324A
                        Boca Raton, Florida 33431
                        (561)961-0922/(561)431-2474- fax

                        By: */s/Aaron A. Wernick*
                        Aaron A. Wernick, Esq.
                        Florida Bar No.: 14059
                        awernick@wernicklaw.com

**Served via CM/ECF:**

- Eyal Berger    eyal.berger@akerman.com, jeanette.martinez@akerman.com
- Soneet Kapila    trustee@kapilaco.com, ecf.alert+Kapila@titlexi.com
- Laudy Luna    ll@lgplaw.com, de@lgplaw.com
- David B Marks    brett.marks@akerman.com, charlene.cerda@akerman.com
- Peter J Maskow    pmaskow@mcglinchey.com, dtironi@mcglinchey.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Zana Michelle Scarlett    Zana.M.Scarlett@usdoj.gov
- Stephen P Strohschein    sstroh@mcglinchey.com, jlovett@mcglinchey.com

# GreenspoonMarder LLP

From the desk of: Robby H. Birnbaum, Esq.
Trade Centre South, Suite 700
100 W. Cypress Creek Road
Fort Lauderdale, Florida 33309-2140
954.491.1120 (Telephone)
954.343.6960 (Facsimile)
Email: Robby.Birnbaum@gmlaw.com

May 31, 2020

Re:     Regarding Application to Employ Matthew Pisoni

Dear Reader,

I write to you in my role as an attorney at the law firm of Greenspoon Marder, LLP. I am a partner at the firm and have practiced law with Greenspoon Marder my entire career, since 1998 when I first started as a law clerk with the firm.

I run our Regulatory Compliance department and have worked extensively on consumer and financial marketing programs, travel industry advertising, regulated sweepstakes and similar promotions, and maintain an extensive practice in state Attorney General, Federal Trade Commission and Consumer Financial Protection Bureau matters. Through the firm, I have had the opportunity to grow my career to represent some of the leading and largest consumer marketing companies in the United States in front of many different state and federal regulators. I have worked extensively with Receivers appointed by the Courts of the Southern District of Florida in contentious FTC and CFPB matters.

I am admitted to practice law in Florida, Wisconsin, and some of their respective federal courts. I also serve as the elected President of several industry trade associations that promote consumer protection and best practices in the marketing of financial services to consumers.

Matt Pisoni, through his company, was a client of mine for over 10 years. Matt and a group of business partners started a direct mail-based magazine service that was known as a "sweepstakes reporter" business. It was a sweepstakes newsletter business that solicited consumers to send a $20 payment for a newsletter that reported on sweepstakes available to enter.

The magazine services were successfully run for years and included review by my law firm as compliance legal counsel.

At some point, the United States Postal Inspection Service or other federal investigation services had concerns about the business, specifically that the representations made in the direct mailers were potentially misleading to consumers. Albeit, again, the mailers were reviewed by compliance counsel prior to mailing and had plainly written, easy to understand disclosures on

Reader Reviewing Matt Pisoni
May 31, 2020
Page 2

them. It was never disputed that all consumers received what they had paid for- the sweepstakes reporters, and there were very few consumer complaints relative to this business type, and very few overall consumer complaints.

In 2015 the government made allegations pertaining to the time period between 2008 and 2014, that the direct mailers were misleading and led people to think they had already won a prize. Although Matt's company did not mail these solicitations directly, it did assist the companies that mailed them.

Matt disagreed with the government's allegations, and decided that he needed to vindicate his name from the allegations so he took that matter to trial instead of agreeing to, what he thought was, unfair plea offers from the government.

During the trial in 2017 it was discovered that the government investigators, and potentially the prosecutors themselves, had covered up evidence and acted unfairly in the investigation and prosecution.

*Specifically, the South Florida based defense attorneys (Marcus Neiman Rashbaum & Pineiro LLP, and J. David Bogenschutz & Associates, P.A. and others) identified major incidences of investigator and prosecutorial misconduct to the extent of hiding documents and not disclosing things the state was to disclose.* As such, the matter proceeded to trial, but later developments with the misconduct have continued post-case investigations in the prosecution of the matter.

*Matt was never found guilty of any fraud or financial crimes.* In fact, the jury returned "Not Guilty" on all but 1 of many counts. Because Matt was involved in the management of a direct mail agency that assisted the companies that sent the solicitations, he was found to have played a role in a "conspiracy" and was found guilty of a single count of conspiracy to commit mail fraud. He was found "Not Guilty" on all underlying mail fraud charges.

At the present time, Matt's counsel is actively engaged seeking that the court dismiss the single count because of the prosecutorial and investigator misconduct. As far as we can tell presently, the prior prosecutors were reassigned and removed from the case; and Matt is working with the Court and following the Court's Orders until the matter resolves. Because incidences of investigator and prosecutorial misconduct lead to the only conviction, Matt has not had to do any prison time, as we wait for the Court to review this matter.

As you can tell from the "Not Guilty" verdicts on all but one charge, there was no finding or evidence that Matt ever targeted, harmed, or defrauded any person.

Matt continues to be an upstanding father to three (3) young children, husband, and hardworking entrepreneur. This was a difficult time for all involved. He continues to this day to mourn the loss of his oldest son that occurred during this ordeal. Despite all this, Matt continues to work hard for his family, humbled by his experiences and respectful of all.

Reader Reviewing Matt Pisoni
May 31, 2020
Page 3

Matt availed himself of our legal system and prevailed but for the government's misconduct and he is working on bringing that issue to resolution.

Matt continues to be actively involved in his community, his family and himself. He continues to have a strong local support structure around him of friends and family that live in South Florida. He spends his weekends mostly with family in Boca Raton Florida. He has many from the South Florida professional community who will vouch for him as financially responsible and a dependable person.

I am available to speak about this matter as needed. My direct line is 954 343 6959.

        Very truly yours,

        GREENSPOON MARDER LLP

        *Robby H. Birnbaum*

        Robby H. Birnbaum
        For the Firm